[No. 8460. Department Two. February 14, 1910.]

## M. C. HEINEMANN et al., Respondents, v. J. T. SULLIVAN et al., Appellants.[1]

HUSBAND AND WIFE—CONTRACTS—VENDOR AND PURCHASER—RATIFICATION BY WIFE. The execution of a deed by the wife, within the time required by a contract of sale made by the husband alone, ratifies the contract and renders it binding on the vendee.

VENDOR AND PURCHASER—ALTERATION OF CONTRACT—RESCISSION BY VENDEE—ESTOPPEL. A contract for the sale of land cannot be rescinded by the vendee because of unauthorized alterations in the contract, where the alterations made were for his benefit and he was informed thereof and made no objection at the time.

ALTERATION OF INSTRUMENTS—INSTRUCTIONS—MATERIALITY. Upon an issue as to whether material alterations were made in a contract for the sale of land, an instruction assuming that the alteration would be material if made without consent of the vendee does not submit the materiality of the alteration to the jury.

SAME. Upon an issue as to whether material alterations were made in a contract for the sale of land, an instruction authorizing the jury to find for the defendant if the plaintiffs signed the contract with alterations "making a deviation in a material matter," is not objectionable as submitting the question of alterations, which were admitted, where there was evidence to support the contention that the alterations were made upon the authority of the defendant, the contest being upon the question of such assent.

SAME. Upon a contest as to whether the vendee consented to alterations in a contract for the sale of land, an instruction to the effect that the vendee would not be liable if material alterations were made, unless the matters inserted were part of the original agreement, is not so broad as to inform the jury that the vendors had a right to alter a written contract to conform to a previous oral agreement without the consent of the vendee.

Appeal from a judgment of the superior court for King county, Ronald, J., entered June 26, 1909, upon the verdict of a jury rendered in favor of the plaintiffs, in an action upon contract. Affirmed.

Sullivan & Stevens, for appellants.

Hastings & Stedman and Walter B. Beals, for respondents.

[1]Reported in 106 Pac. 911.

MOUNT, J.—This action was brought by the respondents to recover upon a check of $2,500, drawn by the appellant J. T. Sullivan on the Scandinavian American Bank of Seattle, in favor of the Perky Investment Company, and indorsed and delivered by that company to the respondents. The case was tried to the court and a jury. Verdict was returned in favor of the plaintiffs. The defendants have appealed.

It appears that the respondents as copartners were the owners of lot 10, block 24, of Compton's First Addition to Seattle, upon which lot was located a three-story and basement apartment house. Respondents desired to sell this property, and listed the same with the Perky Investment Company, real estate brokers, to be sold at the price of $60,000. Mr. Sullivan examined the property and made an offer of $56,500 therefor, and agreed with the Perky Investment Company that, if that company would procure the owners to sell the property to him at that price for cash, less a mortgage against the property, he would pay the investment company $500 toward their commissions. Mr. Sullivan thereupon issued the check for $2,500 in favor of the Perky Investment Company, to be delivered to the respondents as earnest money when the respondents should sign a contract agreeing to sell the property to the appellant for the sum of $56,500. Contracts were prepared in the form of a receipt, which recited that the Perky Investment Company,

"Received from J. T. Sullivan, hereinafter called the purchaser, the sum of $2,500 as earnest money and in part payment for the purchase of certain real estate in King county, state of Washington, and particularly described as follows, to wit: Lot numbered 10 in block 24, Compton's First addition to the city of Seattle, having thereon an apartment house known as The Bancroft, together with any and all improvements thereon, which we have this day sold to said purchaser for the sum of $56,500."

The receipt contained other provisions not material here. This receipt was signed by the Perky Investment Company, and also by Mr. Sullivan as follows: "I hereby agree to

purchase such property on the above terms and pay $56,500 as specified above. J. T. Sullivan, Purchaser." The Perky Investment Company took these receipts, which were executed in triplicate, and prevailed upon the respondents to agree to sell the property to Mr. Sullivan upon the terms stated. When Mr. Sullivan agreed to purchase the property, he was informed that carpets in the halls, gas' ranges, window blinds, and certain fixtures in the building were included therein, but the receipts prepared for and signed by him made no mention of these items, which were worth about $800. When respondents agreed to accept the offer of Mr. Sullivan, it was upon condition that certain tools, lumber, nails, and coal stored in the basement were not included. Thereupon these words were inserted in the receipt by Mr. Perky, after the word "Bancroft," to wit:

"Including all carpets and fixtures of any nature whatsoever, but excepting any personal tools, together with some lumber and nails, which are the personal property of sellers, purchaser is to pay seller for coal in basement at time of transfer of deed."

The respondents thereupon signed the following statement upon the receipt: "I hereby approve the above sale on the terms and conditions as hereinabove set out, and acknowledge receipt of $2,500, and will pay Perky Investment Company $750 as commission." Mr. Perky of the Perky Investment Company thereupon called Mr. Sullivan to the telephone, and explained that the receipt had thus been modified and that the respondents had agreed to sell to him upon the terms stated. Mr. Sullivan made no objections thereto. Upon the witness stand Mr. Sullivan admitted being called to the telephone, but denied that he assented to the modification.

When respondents had executed the contract as stated, the Perky Investment Company indorsed the $2,500 check, and delivered the same to the respondents as earnest money. This occurred on Saturday evening. The next day Mr. Sullivan took Mr. Perky, who had concluded the contract, out

for a ride in an automobile. Nothing was said at that time about the contract. On the next Monday morning, Mr. Sullivan stopped payment of the check, and when it was presented at the bank a little later that day by respondents, payment was refused. Soon thereafter, and on the same day, Mr. Sullivan and Mr. Heinemann met in the office of the Perky Investment Company, and Mr. Sullivan stated that he had supposed the building was a solid brick building, but that he had learned it was of a brick veneer construction, and therefore had stopped payment on the check and concluded not to complete the purchase. He made no objection on account of the interlineation or changes in the contract, and confessed that no misrepresentations had been made to him about the building, and that he had examined the building personally before he had agreed to purchase it. Thereafter this action was begun. Afterwards, and within the time provided for in the contract, an abstract of title was furnished and a deed of the real estate and a bill of sale of all personal property were tendered to the appellant, which tender was refused. Defenses to the check were attempted upon the ground that, (1) the agreements were not signed by the wives of the respondents; (2) misrepresentations in the character of the construction of the building; and (3) that the receipt above mentioned was a written agreement for the purchase of the property, and that the same was altered before acceptance by the respondents, and appellants did not assent to such alteration, and there was therefore no consideration for the check.

The facts above stated very clearly show that there is no merit in any of these defenses. Even if it were necessary for the wives of the respondents to sign the contract, they executed a deed within the time required by the contract, and therefore ratified the same. The appellants, however, did not refuse to complete the contract for that reason at the time they attempted to rescind the same. Whether there were misrepresentations in regard to the character of the con-

struction of the building was a disputed question, and the finding of the jury is conclusive upon that question. The great weight of the evidence is clearly against the appellants upon the question of misrepresentation. The alterations made were almost entirely for the benefit of the appellant. These alterations included $800 worth of property for the appellant, and excluded coal of the value of about $17 reserved to the respondents. It stands to reason, therefore, that no serious objection would have been made by the appellant on that account, and it is admitted that, when the parties came together after interlineations, no objection was made to the contract for that reason. The sole objection was made upon the ground that the character of the building was different from what the appellant supposed it to be. The jury found, and the evidence shows, that the appellant was informed of the alterations in the contract, and consented thereto. The burden was upon the appellants to sustain at least one of these defenses, in order to avoid payment of the check. There was ample evidence to go to the jury upon the questions presented, and the court therefore did not err in refusing to direct a verdict for the appellant.

The court, in instructing the jury in regard to the defense based upon the alleged alteration of the contract, said:

"On this defense I charge you that, if the defendants have satisfied you by a preponderance of the evidence that the check was made to be delivered by the Perky Investment Company on condition only that the plaintiffs execute a certain agreement, and not to be delivered otherwise, and if the plaintiffs did not sign such agreement or signed the same with alterations or insertions therein, making a deviation in a material matter from the agreement as signed by the defendants, then your verdict will be for the defendants, unless the plaintiffs have further satisfied you by a preponderance of the testimony that the matters so inserted, or the alterations, were in fact a part of the original agreement between Sullivan and the Perky Investment Company, and were omitted from the three drafts or triplicates signed by the

defendants, and were afterwards put in to cure the mistake or to make the agreements signed by plaintiffs conform to the actual agreement made by Sullivan and the Perky Investment Company."

Appellants argue that the first part of this instruction, down to the word "unless," submits to the jury the question whether the alteration was material, and also whether the alteration was in fact made, and that this was error because the materiality of the alteration was a question for the court and not for the jury and because the alteration was an admitted fact. The instruction does not so state and was not so intended. It very clearly assumes that the alteration was material if made without the knowledge or consent of appellant. The insertion of certain words in the contract after it was signed by Mr. Sullivan was admitted, but it was claimed that the words were inserted by authority of Mr. Sullivan and there was evidence supporting this claim. This made a question for the jury and the instruction properly submits that question. It is claimed that the latter part of the instruction informed the jury that the respondents had the right, without the assent of the appellant, to alter the written contract to conform to a previous oral agreement. The instruction is not so broad as that. It does not state that respondents had a right to alter the agreement without the assent of the appellant. The contest upon this point was upon the question whether appellant assented or not. The respondents certainly had a right to make the change before they bound themselves, and if afterwards the appellant acquiesced or made no objection on that account, appellants were undoubtedly bound by the alteration. The Perky Investment Company were agents of the appellant for the purpose of procuring the contract to be signed by the respondents. This was admitted and, unless the appellants refused to ratify after they were informed of the change made, they were clearly bound by the contract as finally concluded. This

is clearly what the instruction means, and it was therefore not erroneous.

We find no error in the record, and the judgment is therefore affirmed.

CROW, PARKER, and DUNBAR, JJ., concur.